# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

TRUMAN DEHAEMERS                            )
5314 Cat Tail Court                         )
Centreville, VA  20120                      )
                                            )
    Plaintiff,                       )
                                            )
    v.                               )          Civil Action No.:_____
                                            )
                                            )
MICHAEL W. WYNNE                            )
Secretary, Unites States Department of      )
Air Force                                   )
1670 Air Force Pentagon                     )
Washington, DC  20330                       )

## COMPLAINT

1.      This is an action is brought pursuant to the Privacy Act, 5 U.S.C. § 552a (hereinafter "the Privacy Act") for violations by Agency officials of the safeguarding requirements and disclosure limitations imposed upon federal agencies for records they maintain and collect. Further the Agency is alleged to have failed to appropriately segregate records and more importantly chose to disseminate highly confidential medical information in an apparent attempt to coach witnesses in anticipation of depositions that were being taken in a related EEOC case. As a result Mr. DeHaemers' privacy rights have been harmed, his reputation damaged and the intimate details of his medical condition and treatment have been divulged to colleagues and subordinates. Based on the following and such evidence as to be adduced in discovery and at trial, Plaintiff demands actual and compensatory damages, attorney's fees and costs and such other statutory, injunctive relief as may be warranted.

## JURISDICTION, VENUE, AND PARTIES

2.    As this is a federal question arising under a federal statute, this Court has jurisdiction pursuant to 28 U.S.C. §1331 and 5 U.S.C. § 552a(g)(5).

3.    Venue is proper in this Court pursuant to 5 U.S.C. § 552a(g)(5).

4.    <u>Plaintiff Truman DeHaemers</u> : ("Plaintiff" or "Mr. DeHaemers") is a federal employee of the Department of the Air Force, serving as an Auditor, General Schedule [GS]-0511-14 with the Air Force Audit Agency, Pentagon, Washington, D.C. Mr. DeHaemers is a resident of the State of Virginia and a citizen of that state and the United States.

5.    <u>Defendant Michael W. Wynne</u>: is the Secretary of the United States Department of Air Force (Air Force) and is an essential party by operation of his office and by statute.  Mr. Wynne is not believed to have personal knowledge of the allegations contained herein, and is named solely in his capacity as the head of an agency of the United States.  The real persons in interest are Michael Barbino, Kathlyn Sparks, Brenda Biggs and other employees of the Air Force in their official capacities.

## FACTS:

6.    The Air Force maintains a system of records containing information pertaining to the Plaintiff and has possession and control of the records at issue in this Complaint.

7.    Such records are required to be maintained under both the Freedom of Information Act, 5 U.S.C. §552, and the Privacy Act.

8.    At all times relevant to this Complaint, Mr. DeHaemers has worked in Arlington, Virginia.

9.     Mr. DeHaemers is a well-respected auditor with extensive experience in the government. He maintained a superior performance record without blemish until 2005.

10.     During 2005, Mr. DeHaemers' first-level supervisor was Mr. James L. Sommer, Supervisory Auditor, GS-0511-15 (hereinafter "Mr. Sommer").  Mr. DeHaemers' second-level supervisor was Mr. Michael Barbino, Assistant Deputy Auditor General and Deputy Director of Operations, GS-0511-15 (hereinafter "Mr. Barbino"), and his third Level Supervisor was Ms. Cathlynn Sparks, Deputy, Auditor General EX-0511-010 (hereinafter "Ms. Novel."[1])

11.     In October 2005, the Agency, through Ms. Sparks, proposed a letter of reprimand against Mr. DeHaemers for conduct arising out of his becoming frustrated with the use of office equipment.  This incident was purportedly witnessed by Ms. Brenda Biggs, a former subordinate of Mr. DeHaemers whose work he had criticized as inadequate.

12.     As a result of this reprimand, Mr. DeHaemers filed a complaint pursuant to the EEOC process for discrimination based on sex, age and disability. DeHaemers v. Wynne, Agency No 9L2W06004; EEOC No. 570-2007-0011X

13.     An investigation was conducted by the Agency pursuant to the EEO process. Mr. DeHaemers specifically alleged that his anger and frustration issues were related to a mental impairment that qualified for a disability under the Rehabilitation Act of 1973.  Mr. DeHaemers then initiated a federal sector EEO complaint based on his

---

[1] During the relevant times herein, Ms. Sparks' name changed to Cathlynn Novel.  She will hereinafter be referred to as "Ms. Novel."

perception that he was being punished for a manifestation of his disability.  See DeHaemers v. Wynne, Agency No 9L2W06004; EEOC No. 570-2007-0011X.

14.     A Report of Investigation (ROI), as it is commonly called, was prepared by an Agency-contracted investigator. That ROI reflected that Mr. DeHaemers suffers from a mental impairment, and receives medical treatment for his anger.

15.     Mr. DeHaemers was directed by the EEO investigator to submit confidential medical records to buttress his allegations that he had a mental impairment cognizable under the Rehabilitation Act. Some of these records had been already provided by the Plaintiff to supervisors with a need to know prior to their submission to the EEO investigator.

16.     It should be noted that the Rehabilitation Act requires federal agencies which obtain medical information about applicants and employees to ensure the information is segregated and kept confidential. Thus all information submitted by Mr. DeHaemers should have been treated in a manner consistent with the governing regulations of the EEOC and the federal register.  29 C.F.R. §1630.14(b)(1), (c )(1), and (d)(1).

17.     The EEO investigator and all persons reviewing the record developed by that investigator were clearly on notice of the restrictions that were applicable to the ROI file. Indeed, Mr. DeHaemers' EEO complaint form expressly provided that his medical information would remain confidential in the EEO process, and that such materials and the file in general were also protected by the Privacy Act.  Pl. Ex. 1; see also Pl. Ex. 2., "Complaint of Discrimination in the Federal Government".

18.    The Agency EEO investigator stated that she completed her Report of Investigation on October 12, 2006.  Subsequently, Mr. DeHaemers commenced discovery in the administrative EEO process, which included taking the depositions of the supervisors, co-workers and subordinates who were familiar with or the source of the allegations raised by Mr. DeHaemers.

19.    Deposition testimony revealed that members of the Agency had engaged in collusion to defeat the discovery process. This collusion involved a series of violations of Mr. DeHaemers' Privacy Act Rights under 5 U.S.C. § 522a, thus leading to this suit.

20.    More specifically the sworn testimony established unequivocally that Agency personnel, with the knowledge, consent or actual assistance of supervisors separately maintained personnel files on Mr. DeHaemers;  wrongfully obtained, maintained and disseminated confidential medical information pertaining to Mr. DeHaemers and did so largely to advance the Agency's interests in the defense of Mr. DeHaemers EEO complaint. In short, the Agency improperly created, maintained and disseminated records and did so for an improper purpose.

**COUNT ONE: VIOLATION OF THE PRIVACY ACT:**
**UNLAWFUL DISSEMINATION OF THE PLAINTIFF'S CONFIDENTIAL**
**MEDICAL RECORDS BY NATALEE HAFFNER; KAY F. COLE**

21.    The Plaintiff incorporates the prior paragraphs herein by reference.

22.    Natalee M. Haffner (hereinafter "Ms. Haffner") is an EEO Investigator for the Agency.  Ms. Haffner as the EEO Investigator makes the final determination as to what confidential medical information is "necessary" for processing Mr. DeHaemers' complaint. 29 C.F.R. §1614.108(c)(1).

23.     Mr. DeHaemers submitted documentation regarding this disability to the EEO office in response to a request for medical documents from Ms. Haffner.

24.     Ms. Kay F. Cole (hereinafter "Ms. Cole"), is employed by the Agency as the Director of Operations.  Ms. Cole received Ms. Haffner's ROI which contained confidential medical records regarding Mr. DeHaemers and which is otherwise protected by the Privacy Act.

25.     Ms. Cole reviewed the records without the consent of or notification to Mr. DeHaemers. She than forwarded this information to Mr. Barbino, one of Mr. DeHaemers' supervisors. This was done without notice to or the consent of Mr. DeHaemers.

26.     Upon information and belief, Ms. Haffner and Ms. Cole also disseminated the information contained in the ROI to others within the Agency.

27.     The ROI consisted of 269 pages and contained sensitive and Privacy Act-protected medical information.

28.     The Report's Cover page, authored by Ms. Cole, stated, "[a]ll investigative files are covered by the Privacy Act of 1974, 5 U.S.C. 522a.  Access to or release for complaint files is controlled in accordance with the law to protect the privacy interest of the subjects and the integrity of the files.  **Therefore, if you release copies of this file, or any part of it, you must ensure the information released does not violate the Privacy Act.**" Pl. Ex. 1 (emphasis added).

29.     The ROI contained not only Mr. DeHaemers' Formal Complaint, but information concerning his physical and mental health (Pl. Ex. 2) (Exhibit F of ROI).

30.     Ms. Cole took no steps to determine whether the medical records contained within the ROI were covered by the Privacy Act, nor did she take any steps to sanitize the record to exclude confidential information protected by the Privacy Act as is required by the regulations and policies governing the EEO process.

31.     Ms. Cole forwarded the ROI and the confidential medical information to Mr. Barbino, Mr. Sommers, and Ms. Novel at sometime after October 12, 2006, even though these officials were the principal discriminatory actors against Mr. DeHaemers.

32.     Ms. Haffner also disclosed Mr. DeHaemers' Privacy Act-protected medical records to Mr. Barbino, Mr. Sommers and Ms. Novel, again without the consent of Mr. DeHaemers and without other lawful justification. 5 U.S.C. § 522a(b). Further Ms. Haffner did not make an accurate accounting of this disclosure of the Privacy Act protected materials as is required under the Act.  5 U.S.C. §522a(c). Such acts were either willful or intentional or done with negligence or a reckless disregard of Plaintiff's rights.

33.     As a proximate result, Plaintiff has suffered injury and damages, including actual, compensatory and reputation damages, has lost compensation and has suffered emotional distress which proximately flows from the misuse and dissemination of his private information.  In addition, Plaintiff incurred attorney's fees to uncover these breaches and will spend additional attorney's fees to uncover subsequent breaches and to remedy this misconduct.

**COUNT TWO:**
**UNLAWFUL DISSEMINATION OF PLAINTIFF'S**
**PRIVACY ACT PROTECTED MATERIALS BY MICHAEL BARBINO**

34.     The Plaintiff incorporates the prior paragraphs herein by reference.

35.     Mr. Barbino is the Plaintiff's second-line supervisor.  For reasons unknown, and although clearly identified as a witness in the EEO complaint, Mr. Barbino obtained an unsantized copy of the October 12, 2006 ROI issued by Mr. Haffner, which contained references and exhibits related to Mr. DeHaemers' medical condition.

36.     Despite a clear statement that the ROI was a Privacy Act protected record (Pl. Ex. 1), Mr. Barbino reviewed and disseminated the ROI, in its unsanitized condition, thus committing two separate and distinct violations of the Act: the review and dissemination of the ROI and the review and dissemination of Mr. DeHaemers' medical information.

37.     On Tuesday, February 6, 2007 at 11:21 a.m., Mr. Barbino distributed the entire unsantized ROI regarding the Plaintiff and containing the Plaintiff's confidential medical records, to all persons who the Plaintiff had served deposition notices upon to obtain testimony from in his EEO administrative complaint.

38.     Mr. Barbino may have also distributed the materials to others within and outside the Agency.

39.     The purpose of the distribution was to provide witnesses with information they would not have otherwise been able to obtain because of the Privacy Act.

40.     This allowed witnesses to conform their deposition testimony so as to be consistent with prior records statements, and to inform the witnesses of possible defenses Mr. DeHaemers was raising so as to defeat them.

41.     Indeed Mr. Barbino held a meeting the same day he disseminated the materials (and the day before the first deposition) that was designed to allow the witnesses to come up with a single Agency-sponsored version of events that would

8

obstruct and defeat the EEO process, Mr. DeHaemers' claims and the whole notion behind taking depositions based on the individual personal knowledge of the witnesses.

42.    As a result of Mr. Barbino's obstruction and interference, the following persons received the unsanitized ROI and were instructed to review its contents:

a.    Gerald Kleeman (hereinafter "Mr. Kleeman");

b.    Deborah Jeffries (hereinafter "Ms. Jeffries");

c.    Brenda Biggs (hereinafter "Ms. Biggs");

d.    Robert Shelby, (hereinafter "Mr. Shelby");

e.    Ms. Novel; and

f.    Captain Adam Cook, the Agency Attorney in the EEO case (hereinafter "Captain Cook").

43.    Mr. DeHaemers was not notified of, did not consent to or provide authorization for the release of any Privacy Act protected materials to these persons.

44.    Thus, Mr. Barbino, in an effort to taint the EEO process, engaged in five separate unlawful disclosures of Privacy Act material.

45.    Ms. Jeffries, testified at her deposition that she received the ROI from Mr. Barbino t least once before the dissemination of February 6, 2007 identified in paragraph 42, which is a sixth unlawful disclosure and which raises the probability of more violations of the Act.

46.    Upon information and belief, then other persons received this medical information or subsequently disclosed it to other non-authorized persons.

47.    Neither Mr. Kleeman, Ms. Jeffries, Ms. Biggs nor Mr. Shelby supervise or even work in the same office as Mr. DeHaemers.

48.    None of the recipients of the email had any lawful justification for reviewing the confidential and Privacy Act protected records.

49.    The Agency attorney, though he received the email containing the ROI, did not notify opposing counsel or Mr. DeHaemers of the breach.

50.    Indeed the attorney appears to have met with these witnesses on the day the email was sent by Mr. Barbino.

51.    The conduct of Agency in this matter was intentional and willful with respect to the unlawful disclosure of the Plaintiff's Privacy Act-protected material, and the refusal to correct the same and/or notify the Plaintiff of the breach.  Mr. Barbino unlawfully, willfully and intentionally disseminated this protected material when he issued an unsanitized ROI to all persons who had been identified by the parties as potential witnesses in <u>DeHaemers v. Wynne</u>, Agency No 9L2W06004; EEOC No. 570-2007-0011X on February 6, 2007.

52.    As a proximate result, Plaintiff has suffered injury and damages, including actual, compensatory and reputation damages, has lost compensation and has suffered from emotional distress which proximately flows from the intentional misuse and dissemination of his private information.  In addition, Plaintiff incurred attorney's fees to uncover these breaches and will spend additional attorney's fees to uncover subsequent breaches and to remedy this misconduct.

## COUNT THREE:
## <u>MAINTAINANCE OF SEPARATE PERSONNEL FILE ON THE PLAINTIFF</u>

53.    The Plaintiff incorporates the prior paragraphs herein by reference.

54.    The Privacy Act prohibits the creation and disclosure of information that is not retrievable through "a system of records." 5 U.S.C. § 552a(b).

55.    Ms. Jeffries was Mr. DeHaemers' supervisor until 2004.

56.    Ms. Jeffries was identified as a witness by Mr. DeHaemers in his EEO action, DeHaemers v. Wynne, Agency No 9L2W06004; EEOC No. 570-2007-0011X.

57.    Ms. Jeffries kept a separate file regarding Mr. DeHaemers' medical condition and disability in her office, which was not maintained consistent with the Privacy Act.

58.    Upon information and belief, this file has been disclosed to others.

59.    Ms. Jeffries' file contains medical records.

60.    Ms. Jeffries, with the Agency's knowledge, continued to maintain this record in her desk.

61.    It is believed Ms. Jeffries actions were not malicious in purpose but that she lacked necessary training and guidance on her responsibilities under the Privacy Act. The Agency is nevertheless liable for the violation

62.    As a proximate result, Plaintiff has suffered injury and damages, including actual, compensatory and reputation damages.  In addition, Plaintiff incurred attorney's fees to uncover these breaches and will spend additional attorney's fees to uncover subsequent breaches and to remedy this willful misconduct.

## COUNT FOUR: BARBINO MAINTAINANCE OF SEPARATE PERSONNEL FILE ON THE PLAINTIFF

63.    The Plaintiff incorporates the prior paragraphs herein by reference.

64.    Mr. Barbino wrote a "memorandum to record" entitled "Behavior of Mr. Truman DeHaemers on August 24, 2005." See Pl. Ex. 3. This information was purportedly based on discussions with Ms. Biggs, who also maintained, with Mr. Barbino's knowledge, a database on the Plaintiff.

65.    Mr. Barbino is neither in Ms. Biggs' chain of command nor in Mr. DeHaemers chain of command.

66.    Mr. Barbino wrote his memorandum in preparation of advancing proposed disciplinary action against Mr. DeHaemers.  The memo was written in August 2005 and was not submitted to the Agency personnel department until October 26, 2005.

67.    Mr. Barbino unlawfully disclosed this record to others before submitting it to Mr. DeHaemers' personnel file.

68.    The memorandum refers to Mr. DeHaemers' medical condition.

69.    Ms. Novel testified that Mr. Barbino "did not keep memo for records as some legal personnel documentation officially for the file.  This was simply a statement of the activity that took place, it was not a legal document we sent to a court house and placed in the privacy act; but it was a document relied upon for DeHaemers personnel action." Deposition of  Kathlynn Novel, 2/8/2007 at p. 87, line 3.

70.    The memorandum of record and Mr. Barbino's file on Mr. DeHaemers is not secure nor retrievable through "a system of records." 5 U.S.C. § 552a(b).

71.    Mr. Barbino currently keeps the memorandum of record and other information regarding Mr. DeHaemers in his desk.

72.     The memorandum of record and Mr. Barbino's file on Mr. DeHaemers is not obtainable by Mr. DeHaemers under the Privacy Act, and has not been incorporated into Mr. DeHaemers' official personnel file.  Thus, the maintenance of the record violates the provisions of the Privacy Act and amounts to an unlawful record-keeping practice.

73.    As a proximate result, Plaintiff has suffered injury and damages, including actual, compensatory and reputation damages, has lost compensation and has suffered

emotional distress which proximately flowed from the intentional misuse and dissemination of his private information.  In addition, Plaintiff incurred attorney's fees to uncover these breaches and will spend additional attorney's fees to uncover subsequent breaches and to remedy this willful misconduct.

### COUNT SIX:
### MS. NOVEL'S SEPARATE PERSONNEL FILE ON THE PLAINTIFF

74.    The Plaintiff incorporates the prior paragraphs herein by reference.

77.    Ms. Novel testified that she kept a separate personnel file of Mr. DeHaemers.

78.    Ms. Novel maintains a "memorandum to record" authored by Mr. Barbino, in three separate files in her office, in her desk.

79.    Ms Novel's records refer to Mr. DeHaemers medical records.

80.    The file is not secure not secure nor retrievable through "a system of records." 5 U.S.C. § 552a(b).

81.    Ms. Novel's file is not obtainable by Mr. DeHaemers under the Privacy Act, and has not been incorporated into Mr. DeHaemers' official personnel file.

82.    Upon information and belief, this file has been disclosed to others.

83.    Ms. Novel's file on Mr. DeHaemers contains medical records.

84.    Ms. Novel continues to maintain this file in her desk.

85.    Ms. Novel's action constitute a violation of the Privacy act as it applies to record-keeping practices.

86.    As a proximate result, Plaintiff has suffered injury and damages, including actual, compensatory and reputation damages and has lost compensation  and suffered as emotional distress which proximately flowed from the intentional misuse and

dissemination of his private information.  In addition, Plaintiff incurred attorney's fees to uncover these breaches and will additional attorneys fees to uncover subsequent breaches and to remedy this willful misconduct.

**COUNT SEVEN:**
**MS. BIGGS' SEPARATE PERSONNEL FILE ON THE PLAINTIFF**

87.    The Plaintiff incorporates the prior paragraphs herein by reference.

88.    During the deposition of Ms. Biggs on January 17, 2007, Ms. Biggs testified that beginning in August 2001, she began maintaining a separate personnel file entitled "Truman DeHaemers Behavior." Pl. Ex. 4.

89.    Indeed, according to Ms. Biggs, upon first meeting Mr. DeHaemers in August 2001, she immediately began compiling a data-base upon her computer to catalogue Mr. DeHaemer's conduct.

90.    Ms. Biggs testified that she maintained such records for the sole purpose of  assisting management in disciplining Mr. DeHaemers.

91.    Ms. Biggs routinely added entries and over the course of five years, developed a chronology of what she deemed to be offensive behavior by Mr. DeHaemers.

92.    Ms. Biggs submitted a list of these entries to the management of the Agency which advised her to continue to collect information about Plaintiff.

93.    At present count, Ms. Biggs made 23 file entries regarding Mr. DeHaemers.  Based upon the entries contained on the database maintained by Ms. Biggs, Ms. Biggs had created 23 separate files which were retrievable or ought to have been retrievable under the name "Truman DeHaemers." Pl. Ex. 4.

94.    Ms. Biggs updated and altered her database on Mr. DeHaemers after she learned of his EEO complaint in an effort to harm Mr. DeHaemers and to defeat his EEO complaint.

95.    Agency supervisors were aware of this separate file and were complicit in Ms. Biggs' separate file maintenance.

96.    Additionally, on April 11, 2006, Ms. Biggs authored a memorandum to Jerry Kleeman on agency letterhead.  This memorandum was also kept in a separate personnel filed maintained by Ms. Biggs exclusively on Mr. DeHaemers.  Pl. Ex. 3.

99.    Ms. Biggs conduct repeatedly and intentionally violated the Privacy Act and was done for the improper purpose of defeating Mr. DeHaemers' discrimination complaint or harming him in the workplace.

100.    Mr. DeHaemers was and is a highly qualified federal employee who at one point supervised Ms Biggs' work.

101.    Plaintiff and others, including Ms. Jeffries, have testified that they perceived Ms. Biggs as a substandard performer.

102.    Ms. Biggs maintenance of a file was clearly a defensive and retaliatory attempt  to gather information to deflect from her own performance issues.

103.    Mr. Barbino, Ms. Sparks and others not only condoned Ms. Biggs actions they promoted her because of them.

104.    Ms. Biggs' records were improperly maintained for an improper purpose and she intentionally sought to use them to damage and injure Plaintiff's reputation and standing.

105.    As a proximate result, Plaintiff has suffered injury and damages, including actual, compensatory and reputation damages, has lost compensation and has suffered emotional distress which proximately flowed from the intentional misuse and dissemination of his private information.  In addition, Plaintiff incurred attorney's fees to uncover these breaches and will spend additional attorney's fees to uncover subsequent breaches and to remedy this willful misconduct.

### COUNT EIGHT:
### FAILURE TO PROVIDE RECORDS

106.    The Plaintiff incorporates the prior paragraphs herein by reference.

107.    Plaintiff requested all information retrievable under his name under the Privacy Act. 5 U.S.C. 522a. <u>See</u>  Pl. Ex. 6. (*Note*: the date of the letter incorrectly states March 21, 200<u>6</u>).

108.    The Agency did not acknowledge receipt of this request.  5 U.S.C. § 552a(d)(2)(A).

109.    The Agency did not produce any file, or make any response to this request.

110.    The Agency did not produce Ms. Biggs', Ms. Novel's, Mr. Barbino's or Ms. Jeffries' separate personnel files on Mr. DeHaemers in response to the request and the information contained in those files are separate files in violation of the Privacy Act.

111.    Defendant's willful refusal to timely provide the records requested violates the Privacy Act. <u>See, e.g</u>., 5 U.S.C. § 552a(d).

112.    Defendant's willful refusal to timely provide the records requested unlawfully prohibited the Plaintiff from seeking corrections to any information that may be contained in the documents he requested. The Defendant's refusal to allow review and

correction of records is likewise a violation of the Privacy Act. See, e.g., 5 U.S.C. § 552a(d).

113.    Defendant's refusal to timely provide records pertaining to the Plaintiff has damaged the Plaintiff's ability to successfully compete for positions in the federal government, successfully defend against personnel claims based in part on these actions, and prevented the Plaintiff in his ability to pursue his discrimination claims. Consequently, the Plaintiff has lost the opportunity to apply for positions and has lost income and benefits because the refusal to identify documents regarding Plaintiff have adversely impacted Plaintiff's ability to exercise his statutory rights related to his personnel actions.

113.    In addition to the harm listed above, the Agency should be required to amend and correct Plaintiff's records and to produce the records sought.

## COUNT NINE:
## FAILURE TO MAINTAIN RECORDS

114.    The Plaintiff incorporates the prior paragraphs herein by reference.

115.    In testimony of Ms. Biggs, it became apparent that Ms. Biggs no longer has custody of personnel files used to support an adverse action against Mr. DeHaemers.

116.    Defendant has therefore failed to establish and maintain physical safeguards to ensure the security and confidentiality of records in its possession in violation of the Privacy Act and the Defendant's regulations. See e.g., 5 U.S.C. § 552a(e)(9) and (10).

117.    The Defendant's management testified that many of Mr. DeHaemers' records, including the Plaintiff's medical information, were simply kept in a folder.

118.    Defendant refuses to properly safeguard records pertaining to the Plaintiff has damaged the Plaintiff's ability to successfully prosecute his EEO Complaint and Plaintiff's ability to exercise his statutory rights related to the rights terms and conditions of his employment.

119.    Upon information and belief, the Agency has permitted the alteration and/or destruction of some of these files.

120.    As a proximate result, Plaintiff has suffered injury and damages, and lost compensation as well as emotional distress which proximately flowed from the intentional misuse and dissemination of his private information.  In addition, Plaintiff incurred attorney's fees to uncover these breaches and will spend more attorneys' fees to uncover subsequent breaches and to remedy this willful misconduct.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Truman DeHaemers prays that this Court:

(a)    Declare that the Defendant has violated the Privacy Act by withholding the requested records;

(b)    Order the Defendant to immediately make the requested records available to the Plaintiff;

(c)    Declare that the Defendant violated the Privacy Act by failing to safeguard records pertaining to the Plaintiff;

(d)    Award the Plaintiff damages to the maximum amount permissible under the Privacy Act, including for all lost income, benefits, and/or other adverse impacts including emotional distress for each unlawful

disclosure of the Plaintiff's Privacy Act records identified hereinabove or as is disclosed at trial;

(e)     Award Plaintiff all costs and attorneys' fees pursuant to 5 U.S.C. § 552a(g)(2); and

(f)     All other relief which this court deems fair and just and available under 5 U.S.C. § 552a.

## <u>JURY DEMAND</u>

Trial by jury is requested on all issues that may be considered by a jury.

Respectfully submitted,
TRUMAN DEHAEMERS
By Counsel

WADE & BYRNES, P.C.


_____/s/_____
Kevin Byrnes, Esq., DC. Bar No. 480195
616 North Washington Street
Alexandria, Virginia 22314
Phone: 703/836-9030
Fax: 703/683-1543
Counsel for Plaintiff Truman DeHaemers

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

TRUMAN DEHAEMERS

## DEFENDANTS

MICHAEL W. WYNNE, Sec'y United States Department of Air Force

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Kevin Byrnes
WADE & BYRNES PC
616 N. Washington Street
Alexandria, VA 22314
703-836-9030

ATTORNEYS (IF KNOWN)

Case: 1:07-cv-00658
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 4/10/2007
Description: DEHAEMERS v. WYNNE

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE an x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ● 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ○ A. Antitrust | ○ B. Personal Injury/ Malpractice | ○ C. Administrative Agency Review | ○ D. Temporary Restraining Order/Preliminary Injunction |
|---|---|---|---|
| | □ 310 Airplane | □ 151 Medicare Act | Any nature of suit from any category may be selected for this category of case assignment. |
| | | **Social Security:** | |
| | | □ 861 HIA ((1395ff) | *(If Antitrust, then A governs)* |
| | | □ 862 Black Lung (923) | |
| | | □ 863 DIWC/DIWW (405(g) | |
| | | □ 864 SSID Title XVI | |
| | | □ 865 RSI (405(g) | |
| | | **Other Statutes** | |
| | | □ 891 Agricultural Acts | |
| | | □ 892 Economic Stabilization Act | |
| | | □ 893 Environmental Matters | |
| | | □ 894 Energy Allocation Act | |
| | | □ 890 Other Statutory Actions (If Administrative Agency is Involved) | |

Court Name: District of Columbia
Division: 1
Receipt Number: 4616903513
Cashier ID: twells
Transaction Date: 04/10/2007
Payer Name: Wade Byrnes

CIVIL FILING FEE
For: Wade Byrnes
Amount: $350.00

CHECK
Check/Money Order Num: 7791
Amt Tendered: $350.00

Total Due: $350.00
Total Tendered: $350.00
Change Amt: 0.00

07-0658

Only when the bank clears the check, money order, or verifies credit of funds, is the fee or debt officially paid or discharged. A $45 fee will be charged for a returned check.

| | ○ F. Pro Se General Civil |
|---|---|

**Forfeiture/Penalty**

28 USC 158
awal 28 USC 157

- □ 610 Agriculture
- □ 620 Other Food &Drug
- □ 625 Drug Related Seizure of Property 21 USC 881
- □ 630 Liquor Laws
- □ 640 RR & Truck
- □ 650 Airline Regs
- □ 660 Occupational Safety/Health
- □ 690 Other

**Other Statutes**
- □ 400 State Reapportionment
- □ 430 Banks & Banking
- □ 450 Commerce/ICC Rates/etc.
- □ 460 Deportation

- □ 470 Racketeer Influenced & Corrupt Organizations
- □ 480 Consumer Credit
- □ 490 Cable/Satellite TV
- □ 810 Selective Service
- □ 850 Securities/Commodities/ Exchange
- □ 875 Customer Challenge 12 USC 3410
- □ 900 Appeal of fee determination under equal access to Justice
- □ 950 Constitutionality of State Statutes
- □ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| O  G. *Habeas Corpus/* *2255* | O  H. *Employment* *Discrimination* | O  I. *FOIA/PRIVACY ACT* | O  J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☒ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| O  K. *Labor/ERISA* *(non-employment)* | O  L. *Other Civil Rights* *(non-employment)* | O  M. *Contract* | O  N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding  O 2 Removed from State Court  O 3 Remanded from Appellate Court  O 4 Reinstated or Reopened  O 5 Transferred from another district (specify)  O 6 Multi district Litigation  O 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

This is an action brought pursuant to the Privacy Act, 5 U.S.C. 552a for violations by Air Force Officials regarding disclosure and record keeping

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____ Check YES only if demanded in compl.
JURY DEMAND:  YES ☒  NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE  4/09/07   SIGNATURE OF ATTORNEY OF RECORD _____

4/10/07   **INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**   JTC
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.



## DEPARTMENT OF DEFENSE
CIVILIAN PERSONNEL MANAGEMENT SERVICE
OFFICE OF COMPLAINT INVESTIGATIONS
1222 STANLEY RD, BLDG 129
FORT SAM HOUSTON, TX 78234-5082

Area Code: (210) 221-2551
DSN: 471-2551
Facsimile: (210) 221-2883

OCT 1 2 2006

MEMORANDUM FOR SAF/MRBA (AFCARO)
1535 Command Drive, Suite E309
Andrews AFB, MD 20762-7002

SUBJECT: Complaint of Mr. Truman DeHaemers
Agency Number 9L2W06004

The Investigative File, including the Report of Investigation, for the subject discrimination complaint is provided for appropriate action.

All investigative files are covered by the Privacy Act of 1974, 5 U.S.C. Section 552a. An investigative file does not constitute a public record because of its coverage under the Privacy Act. Access to or release of complaint files is controlled in accordance with the law to protect the privacy interests of the subjects and the integrity of the files. Therefore, if you release copies of this file or any part of it, you must ensure the information released does not violate the Privacy Act. However, the original file must not be sanitized, so that deciding officials and adjudicators can completely review and properly adjudicate the case.

As a reminder, the Equal Employment Opportunity Commission's Management Directive 110, Chapter 6, Section IV.B prohibits investigators from making or recommending a finding of discrimination.

Kay F. Cote
Director of Operations, Air Force Component

Attachment:
Investigative File

*Received at AFAA*
*8 AM*

## COMPLAINT OF DISCRIMINATION IN THE FEDERAL GOVERNMENT

*(This form is subject to the Privacy Act of 1974 - see back)*

*(See back for instructions - Please type or print)*

FOR AGENCY USE *FEB 22 2005*

**1. FULL NAME OF COMPLAINANT** *(Last, First, Middle Initial)*
Truman Charles De Haemers

**2. TELEPHONE NUMBER** *(Include Area Code)*

**3. ADDRESS** *(Street, City, State, and ZIP Code)*
5314 Cat Tail Court
Centreville, VA
20120

**a. HOME**
(703) 802-4995

**b. OFFICE**
(703) 696-7906

**4. FEDERAL OFFICE YOU BELIEVE DISCRIMINATED AGAINST YOU**
*(Prepare a separate complaint form for each office which you believe discriminated against you.)*

**5. ARE YOU NOW WORKING FOR THE FEDERAL GOVERNMENT?**
*(If answer is "Yes" complete a, b, and c below.)*
☑ YES    ☐ NO

**a. NAME OF OFFICE THAT YOU BELIEVE DISCRIMINATED AGAINST YOU**
US Air Force Audit Agency

**a. NAME OF AGENCY WHERE YOU WORK**
U.S. Air Force Audit Agency

**b. ADDRESS OF OFFICE** *(Street, City, State, and ZIP Code)*
1126 Air Force, Pentagon
Washington DC 20330

**b. ADDRESS OF YOUR AGENCY** *(Street, City, State, and ZIP Code)*
Air Force Audit Agency
1126 Air Force, Pentagon
Washington DC 20330

**c. NAME AND TITLE OF PERSON(S) YOU BELIEVE DISCRIMINATED AGAINST YOU** *(if you know)*
Cathy Sparks
Michael Barbino

**c. TITLE AND GRADE OF YOUR JOB**
STAFF Auditor
GS-14

**6. NAME AND ADDRESS** *(Street, City, State, and ZIP Code) OF YOUR REPRESENTATIVE (if any)*
Kevin Byrnes
616 N. Washington Street
Alexandria, VA 22314
703-836-9030

**7. DATE ON WHICH MOST RECENT ALLEGED DISCRIMINATION TOOK PLACE** *(YYMMDD)*
05 11 14

**8. CHECK BELOW WHY YOU BELIEVE YOU WERE DISCRIMINATED AGAINST**

| | | |
|---|---|---|
| | **a. RACE** *(If so, state your race)* | |
| | **b. COLOR** *(If so, state your color)* | |
| | **c. RELIGION** *(If so, state your religion)* | |
| ✓ | **d. NATIONAL ORIGIN** *(If so, state your natural origin)* | |
| ✓ | **e. SEX** *(If so, state your sex)* | male |
| ✓ | **f. AGE** *(If so, state your age)*[1] | 55 |
| ✓ | **g. HANDICAP** *(If so, state whether mental or physical)* | Depression and arthritis |
| | **h. SEXUAL HARASSMENT** *(If so, state your sex and the sex of the person you believe harassed you)* | |

**9. EXPLAIN IN SPECIFICS HOW YOU BELIEVE YOU WERE DISCRIMINATED AGAINST** *(treated differently from other employees or applicants)* **DUE TO YOUR RACE, COLOR, RELIGION, NATIONAL ORIGIN, SEX, AGE, OR HANDICAP** *(For each allegation, please state to the best of your knowledge, information and belief what incident occurred and when the incident occurred. If you need more space, continue on another sheet of paper.)*

SEE Attached

**10. I HAVE DISCUSSED MY COMPLAINT WITH AN EQUAL EMPLOYMENT OPPORTUNITY COUNSELOR** *(See instructions)*
☑ YES    ☐ NO

**11. NAME OF COUNSELOR**
Shelly Walker

**12. STATE CORRECTIVE ACTION YOU ARE SEEKING**
Removal of letter of reprimand
Provision of reasonable accommodations
Payment of attorneys fees

**13. SIGNATURE OF COMPLAINANT**
Truman C. DeHaemers

**14. DATE OF THIS COMPLAINT** *(YYMMDD)*
06 02 14

[1] *Complaints of discrimination because of age apply only to employees or applicants who were at least 40 years of age at the time the discriminatory action is alleged to have occurred.*

DD Form 2655, NOV 93

## Complaint

Truman DeHaemers files this complaint seeking reasonable accommodation for his disabling condition, removal of an offending letter of reprimand and attorneys' fees incurred in the filing and resolution of this complaint.

Mr. DeHaemers suffers from Dysthymic Disorder, a form of major depression that is well recognized by the Psychiatric community as a mental impairment that substantially effects major life activities such as eating, sleeping, concentration and mood (see Diagnostical and Statistical Manual IV Edition § 300.4). Dysthymic Disorder is a form of chronic depression that is often hidden from the affected person, who may not suffer the symptoms of chronic hopelessness and despair that characterize major depression.

Dysthymic Disorder manifests itself in the workplace through irritabilty and inability to properly gauge office problems and conflicts, and a tendency toward perfectionism. These behaviors are precisely what have punctuated Mr. DeHaemers' situation at the workplace since he was diagnosed with the condition in 1997.

The Agency was and is aware of Mr. DeHaemers' mental health condition.

On October 17, 2005 the Air Force Audit Agency proposed a reprimand of Mr. DeHaemers based on his interaction with a co-worker Brenda Biggs. Mr. DeHaemers has had problems with Ms. Biggs for at least three years. At one point Ms. Biggs reported to Mr. DeHaemers who viewed Ms. Biggs as a substandard performer and advised management of his concerns.

On June 9, 2005, Mr. DeHaemers expressed frustration with a computer program which routinely malfunctions by using certain expletives. These expletives were directed toward an inanimate object and not towards any employee or human being. Mr. DeHaemers apologized for his frustration and considered the matter closed.

On August 23, 3005, Mr. DeHaemers had more difficulty with the computer system and expressed himself colorfully. Ms. Biggs, seeing an opportunity to even the score, reported the language to her managers who then formally reprimanded Mr. DeHaemers.

It should be noted that Mr. DeHaemers' behavior has a direct linkage to his disability. Mr. DeHaemers has several times requested either a private office or what amounts to a "pressure valve" location where he could go when his disability flares up over relatively trivial office problems.

The command has ignored these requests, as well as Mr. DeHaemers' requests that he not be subject to virtual surveillance by Ms. Biggs.

The provision of a private space or office for Mr. DeHaemers is supported by the diagnosis of his treating physician. It represents a de minimus and easily implemented

Pages

MEMORANDUM FOR RECORD                    24 August 2005    GC2W02604

SUBJECT: Behavior of Mr. Truman DeHaemers, AFAA/DOO GS-511-14    OCT 2 8 REC'D
                                                                 2005

1. About 1000 on Tuesday 23 August 2005, XXX asked to see me.  XXX indicated that Mr. Truman DeHaemers was again throwing temper tantrums and using inappropriate language. XXX had been on leave for 2+ weeks and Tuesday was XXX first day back in the office. XXX mentioned he had been quiet since a previous incident that occurred during the week of 6 June. XXX stated XX told XXX XX had also heard the foul language.  XXX stated that the tantrums and language were making XXX very nervous and affecting XXX medically.

2. XXX stated Ms. Sparks, at the time of the previous incident, requested that XXX apprise her of any future occurrences. Since Ms. Sparks was gone, XXX was notifying me because of my prior involvement.  I informed XXX Ms. Sparks was at work if XXX wanted to contact her.

3. At about 1030 on Tuesday 23 August 2005, I discussed the situation with Ms. Deborah Jeffries, Mr. DeHaemers' first-level supervisor. I asked if she was aware of the issue or if Truman was demonstrating any unusual anger on that day. She stated she was unaware of any problems and that he seemed fine during her weekly staff meeting earlier in the morning. I asked Ms. Jeffries if she wanted to discuss the situation with Mr. DeHaemers. She preferred that I handle since the complaint was given to me. I told her I would talk to Mr. DeHaemers.

4. Before talking with Mr. DeHaemers, I requested that XX come to my office at about 1130 and asked whether XX had witnessed the anger and inappropriate language. XX confirmed the anger and language incidents indicating they were occurring ever since Mr. DeHaemers began working on the annual plan. (I would approximate this to be 2 weeks or so). This period covered the same time period XXX was on leave. XX indicated that, rather than report the situation to anyone, XX ignored Mr. DeHaemers' anger and foul language.

5. I asked X whether X had witnessed the anger and inappropriate language. X also confirmed the anger and language incidents. X also indicated X had not reported the situation to anyone either. X did state that Ms. Jeffries, X first-level supervisor, had asked X the same questions earlier that morning. X had been gone for 2 weeks and this was also X first day back. X indicated X heard frequent tantrums and foul language.

6. In between the meetings with XX and X, XXXX stopped by my office to say that Ms. Deborah Jeffries, also XXXX first-level supervisor, suggested XXXX might come and see me. According to XXXX, XXXX had heard Mr. DeHaemers get mad, but did not hear any foul language. Of the four (X, XX, XXX, XXXX) individuals, XXXX sits the furthest from Mr. DeHaemers (though still reasonably close).

7. Sometime between 1300 and 1400 on 23 August 2005, Mr. DeHaemers came to my office and said he heard I wanted to speak with him. I indicated we had a repeat of his inappropriate behavior similar to the incidents discussed in our 9 June 2005 counseling session. He stated his doctor indicated it was OK for him to get mad when having to deal with incompetent people. I reiterated that this behavior was unacceptable, created a hostile work environment, and did not

64



EXHIBIT
Barbre # 6
2/7/07  S-6

care what his doctor thought was acceptable. He then said he would offer his retirement papers tomorrow if I wanted and that he was having lunch with the IGATI director and might be offered an instructor position. I told him his decision to retire was his choice and that I truly valued the quality of his work. He further indicated (a) he had not used profanity, (b) wanted to know the specific words, and (c) his accusers were lying. Told him I had at least three confirmations so I felt this was sufficient and that I did not request specific words that he used. The second accuracy issue involved prior occurrences. Mr. DeHaemers claimed the new location (1101 Wilson) contributed to the problem because he did not have this problem at Arlington Plaza where he had a private office. Told him that was incorrect, we did have the problem at Arlington Plaza, and that the issue was discussed after Ms. Sparks' one-on-one meetings in Dec-Jan. I asked whether we were putting pressure on him to get the plan done. He said the pressure was self-imposed and that he had high standards. Unfortunately, the directorates did not follow the DO-provided and AG-approved planning guidance creating an additional workload for him. His workload increased further because some requests for access to Defense Finance and Accounting Service (DFAS) data and personnel, submitted by AFAA members, were incomplete thereby adding to his tasks. I thanked him for coming to see me but reemphasized that this behavior was unacceptable.

8. Later in the afternoon, I received a phone call from Ms. Sparks indicating that XXX had contacted her regarding the incident. Ms. Sparks indicated that XXX told her XXX was not feeling well. Based on this condition, Ms. Sparks suggested to XXX that XXX go home for the rest of the day. Ms. Sparks also indicated that we needed to do something.

*Michael V. Barbino*

MICHAEL V. BARBINO
Deputy Director
(Operations)

65

TRUMAN DEHAEMERS' BEHAVIOR

| DATE | EVENT | MY ACTION |
|------|-------|-----------|
| 2003-Dec 04 | Continual use of vulgar and degrading language and bouts of "temper tantrums" and belittling and putting down women and minorities | I kept informing my supervisor, Mr. Sommer and he told me that he informed Mr. Barbino who informed Ms. Jeffries. |
| Jan-05 | Threw papers, yelled, kicked the wall and said vulgar words | Reported this to Ms. Cathy Sparks, Deputy Auditor General, 703.614.5738, during our first one on one meeting. Also Mike Van Duyne told me that he reported Trumans' unprofesstional and hostile behavior to Ms. Sparks. |
| Mar-05 | Yelled and cussed and said that Mr. James Sommer was committing T&A fraud | Reported to my supervisor and when Mr. Sommer approached Truman, I heard Truman cuss out Mr. Sommer. |
| Apr-05 | Said vulgar words and said that the AFAA could do nothing to him because he had something on each one of them. | Reported this unprofessional and hostile behavior to James Sommer. |
| Apr-05 | Truman said a lot of vulgar words | Ms. Rosalind Krieger, 703.696.7900, was in my cubicile and heard his vulgar words and we went and talked to Mr. Sommer |
| May-05 | Said vulgar words and hit the desk | Jodie Fisher and Jerry Kleeman asked how I could stand his behavior. We went to Mr. Sommer |
| Jun-05 | Cussed and yelled about how dumb Ms. Jeffries and Mr. Dawes were and that they did not deserve to be in their positions and that the only reason Ms. Jeffries got her position because she was a female. | Reported to my supervisor, Mr. Sommer |
| Jun-05 | Threw papers, yelled, kicked the wall and said vulgar words | Talked with Jerry Kleeman who said that he could not believe his hostile behavior |
| Jun-05 | Said vulgar words that degraded women and minorities. He said that he was a "Good old boy" from way back and nothing could happen to him. | Candace Milbry, AFAA IG, 703.696.7901, and I reported his conduct to James Sommer |



EXHIBIT
Barbino #2
2|7|07 SG
PENGAD 800-631-6989

TRUMAN DEHAEMERS' BEHAVIOR

| | | |
|---|---|---|
| Jun-05 | At lunch Truman had a mixed drink and then bragged about his money and that he did not need this F... job and how stupid females and blacks were and that is why they did not have money.  Mr. Sommer was present. | I told Truman and Mr. Sommer that I did not like his behavior |
| Jul-05 | Said vulgar words | Brenda Moon, 696-7843, stated that she heard his outbursts and we reported this to James Sommer |
| Jul-05 | vulgar language and irratite behavior | Reported to my supervisor |
| Aug-05 | He cussed and used more vulgar language and irratite behavior and yelled at the copier | I reported this behavior to Mr. Sommer, Mr. Barbino, and Ms. Sparks |
| Aug-05 | Truman yelled and cussed at Sandra Patricola, 696-7911.  She went to her supervisor, Ron Prentkiewica, 696-7880, and he reported this behavior to Ms. Jeffries | I reported this behavior to Mr. Sommer. |
| Sep-05 | vulgar language and irratite behavior and yelled about women in the workplace | Reported to Ms. Sparks, Deputy Director (Operations), 696-7764 and Mr. Sommer |
| Oct-05 | Yelling and cussing and then Truman kept saying how stupid female auditors and black people were. | Reported this to Mr. Sommer and Mr. Barbino |
| Nov-05 | Continual use of vulgar language | Met with Ms. Sparks at the Pentagon and told her that I was going to talk to the 11th Wing EEO personnel |
| Nov-05 | Approached by Sidney Pennington concerning my complaint toward Truman.  She grabbed my shoulders and told me to leave Truman alone that he was just being himself. | Reported this to Mr. James Sommer, Mr. Michael Barbino, and Ms. Cathy Sparks |
| Nov-05 | Spoke with Jerry Kleeman about Truman's behavior and he said that Ms. Deborah Jeffries jumped on him about telling Mr. Barbino about Truman's behavior. | Reported this to Mr. James Sommer, Mr. Michael Barbino, and Ms. Cathy Sparks |

TRUMAN DEHAEMERS' BEHAVIOR

| | | |
|---|---|---|
| Nov-05 | After another outburst from Truman, I spoke with Jerry Kleeman about Truman's behavior. | Reported this to Mr. James Sommer, Mr. Michael Barbino, and Ms. Cathy Sparks |
| Jan-06 | Truman cussed and kicked his desk. | Reported this to Mr. James Sommer. |
| 19-Apr-06 | Cussed and threw papers because DAMIS was down. He called the contractors a bunch of idiots and that the AFAA was no f....ing good. He also yelled that women are worthless in the work force. | Reported this to Mr. James Sommer |
| Jun-06 | Cussed about Ms. Liggins moving printers and fax machines. Kept yelling, cussing and throwing a fit and saying that he was the only one that worked and he could not do his job because of the stupid people around him. | I told Mr. Sommer about this unprofessional behavior |

# Discussion / Memorandum For Record

**DATE:**        11 April 06

**SUBJECT:**    Discussion with Jerry Kleeman

**PARTICIPANTS:**

| Name | Duty Title/Position | Office Symbol | Location | Phone # |
|---|---|---|---|---|
| Jerry Kleeman | Staff Auditor GS-14 | HQ AFAA/DOO | 1101 Wilson Blvd Suite 1010 Arlington VA 22209 | 696-7904 |

**DISCUSSION:**

I spoke with Jerry Kleeman during our NSPS training on 11 April 06. Later that day he was told by Mr. Truman DcHaemers that he was talking to the enemy. This was told to me by Jerry and others that heard this on the elevator. Jerry also told me that I was doing the right thing by reporting the behavior of Mr. DcHaemers but since his supervisor and upper management did not curtail his behavior I am referred to as the enemy.

# PRIVACY ACT REQUEST

**FROM:**

Mr. Truman DeHaemers
5314 Cat Tail Court
Centreville, Virginia 20120

**TO:**

**By Certified Mail:**
John M. Gilliagan
The Air Force Privacy Office
Office of the Air Force Chief Information Officer (AF-CIO)
Directorate of Plans and Policy
Information Management Policy Branch (SAF/XCISP (A6XP)
1800 Air Force Pentagon
Washington, D.C. 20330-1800

**By Certified Mail:**
Michael W. Wynne
Secretary, United States Department of Air Force
1670 Air Force Pentagon
Washington DC 20330

Dear Mr. Gilliagan and Mr. Wynne:

      Under the provisions of 5 U.S.C.A. § 552a and 1 C.F.R. §§ 425.1 et seq., I request a copy of the following records: all personnel records retrievable under my name.

      If there are any fees for copying records I am requesting, please supply the records without informing me if the fees do not exceed five-hundred dollars ($500.00).

      If all or any part of this request is denied, please cite the specific exemption which you think justifies your refusal to release the information. Also, pleas inform me of your agency's appeal procedures. In order to expedite consideration of my request, I am enclosing a copy of my current driver's license issued by the Commonwealth of Virginia and my health insurance card from GEHA which has my social security number as my member number. Thank you for your prompt attention to this matter.

      Dated: March 21, 2006

                    Sincerely,

                    Truman DeHaemers