## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TRUMAN DEHAEMERS                )
5314 Cat Tail Court             )
Centreville, VA  20120          )
                                )
    Plaintiff,          )
                                )
    v.                  )     Case 1:07-cv-00658-CKK
                                )
                                )
MICHAEL W. WYNNE                )
Secretary, Unites States Department of  )
Air Force                       )
1670 Air Force Pentagon         )
Washington, DC  20330           )

## AMENDED COMPLAINT

1.    This is an action is brought pursuant to the Privacy Act, 5 U.S.C. § 552a (hereinafter "the Privacy Act") for violations by Agency officials of the safeguarding requirements and disclosure limitations imposed upon federal agencies for records they maintain and collect. Further the Agency is alleged to have failed to appropriately segregate records and more importantly chose to disseminate highly confidential medical information in an apparent attempt to coach witnesses in anticipation of depositions that were being taken in a related EEOC case.

2.    This action is also brought pursuant to the Rehabilitation Act of 1973 ("Rehabilitation Act") for unlawful disclosures of confidential medical records by the Defendant and under the anti-retaliation provisions of the Rehabilitation Act , the Age Discrimination in Employment Act of 1967 ("ADEA)" and Title VII of the Civil Rights Act of 1964 ("Title VII") for these disclosures.

3.      As a result these disclosures, Mr. DeHaemers' privacy rights have been harmed, his reputation damaged, and the intimate details of his medical condition and treatment have been divulged to colleagues and subordinates. Based on the following and such evidence as to be adduced in discovery and at trial, Plaintiff demands actual and compensatory damages, attorney's fees and costs and such other statutory, injunctive relief as may be warranted.

## JURISDICTION, VENUE, AND PARTIES

4.      As this Complaint contains federal questions arising under federal statutes, this Court has jurisdiction pursuant to 28 U.S.C. §1331 and 5 U.S.C. § 552a(g)(5).

5.      Venue is proper in this Court pursuant to 5 U.S.C. § 552a(g)(5) and is also proper pursuant to 28 U.S.C. § 1391(b).

6.      With respect to the claims arising under the Rehabilitation Act, jurisdiction is presently with the EEOC.  The Commission acknowledged receipt of our request for hearing on November 20, 2006 and more than 180 days have elapsed since the Commission received this notice. Pl. Ex. 7.  Pursuant to 29 C.F.R § 1614.407(d), and by the filing of this complaint, jurisdiction is now vested in this court.

7.      Plaintiff Truman DeHaemers : ("Plaintiff" or "Mr. DeHaemers") is a federal employee of the Department of the Air Force, serving as an Auditor, General Schedule [GS]-0511-14 with the Air Force Audit Agency, Pentagon, Washington, D.C. Mr. DeHaemers is a resident of the State of Virginia and a citizen of that state and the United States.

8.      Defendant Michael W. Wynne: is the Secretary of the United States Department of Air Force (Air Force) and is an essential party by operation of his office

and by statute.  Mr. Wynne is not believed to have personal knowledge of the allegations contained herein, and is named solely in his capacity as the head of an agency of the United States.  The real persons in interest are Michael Barbino, Kathlyn Sparks, Brenda Biggs and other employees of the Air Force in their official capacities.

## FACTS:

9.      The Air Force maintains a system of records containing information pertaining to the Plaintiff and has possession and control of the records at issue in this Complaint.

10.      Such records are required to be maintained under both the Freedom of Information Act, 5 U.S.C. §552, and the Privacy Act.

11.      At all times relevant to this Complaint, Mr. DeHaemers has worked in Arlington, Virginia.

12.      Mr. DeHaemers is a well-respected auditor with extensive experience in the government. He maintained a superior performance record without blemish until 2005.

13.      During 2005, Mr. DeHaemers' first-level supervisor was Mr. James L. Sommer, Supervisory Auditor, GS-0511-15 (hereinafter "Mr. Sommer").  Mr. DeHaemers' second-level supervisor was Mr. Michael Barbino, Assistant Deputy Auditor General and Deputy Director of Operations, GS-0511-15 (hereinafter "Mr. Barbino"), and his third Level Supervisor was Ms. Cathlynn Sparks, Deputy, Auditor General EX-0511-010 (hereinafter "Ms. Novel."[1])

---

[1] During the relevant times herein, Ms. Sparks' name changed to Cathlynn Novel.  She will hereinafter be referred to as "Ms. Novel."

14.    In October 2005, the Agency, through Ms. Sparks, proposed a letter of reprimand against Mr. DeHaemers for conduct arising out of his becoming frustrated with the use of office equipment.  This incident was purportedly witnessed by Ms. Brenda Biggs, a former subordinate of Mr. DeHaemers whose work he had criticized as inadequate.

15.    As a result of this reprimand, Mr. DeHaemers filed a complaint pursuant to the EEOC process for discrimination based on sex, age and disability. DeHaemers v. Wynne, Agency No 9L2W06004; EEOC No. 570-2007-0011X.

16.    Mr. DeHaemers  is protected by the Rehabilitation Act's anti-retaliation provisions by virtue of his invocation of the Rehabilitation Act in DeHaemers v. Wynne, Agency No 9L2W06004; EEOC No. 570-2007-0011X.

17.    Mr. DeHaemers  is a member of the class of persons protected by the Rehabilitation Act by virtue of his disability, his perceived disability and his request for reasonable accommodations.

18.    Mr. DeHaemers  is protected by the ADEA's anti-retaliation provisions by virtue of his invocation of the ADEA in DeHaemers v. Wynne, Agency No 9L2W06004; EEOC No. 570-2007-0011X.

19.    Mr. DeHaemers  is protected by the Age Discrimination in Employment Act of 1967 ("ADEA)" by virtue of being over forty years old.

20.    Mr. DeHaemers  is protected by Title VII of the Civil Rights Act of 1964 ("Title VII") by virtue of his sex (male) and his allegations that the terms and conditions of his employment were adversely affected due to his sex (male).

21.    Mr. DeHaemers  is protected by Title VII's anti-retaliation provisions by virtue of his invocation of Title VII in <u>DeHaemers v. Wynne</u>, Agency No 9L2W06004; EEOC No. 570-2007-0011X.

22.    An investigation was conducted by the Agency pursuant to the EEO process.  Mr. DeHaemers specifically alleged that his anger and frustration issues were related to a mental impairment that qualified for a disability under the Rehabilitation Act of 1973.  Mr. DeHaemers then initiated a federal sector EEO complaint based on his perception that he was being punished for a manifestation of his disability and on the basis of Age Discrimination.  <u>See</u> <u>DeHaemers v. Wynne</u>, Agency No 9L2W06004; EEOC No. 570-2007-0011X.

23.    A Report of Investigation (ROI) was prepared by an Agency-contracted investigator. That ROI reflected that Mr. DeHaemers suffers from a mental impairment, and receives medical treatment for his anger.

24.    Mr. DeHaemers was directed by the EEO investigator to submit confidential medical records to buttress his allegations that he had a mental impairment cognizable under the Rehabilitation Act. Some of these records had been already provided by the Plaintiff to supervisors with a need to know prior to their submission to the EEO investigator.

25.    The Rehabilitation Act requires federal agencies which obtain medical information about applicants and employees to ensure the information is segregated and kept confidential. All information submitted by Mr. DeHaemers should have been treated in a manner consistent with the governing regulations of the EEOC and the federal register.  29 C.F.R. §1630.14(b)(1), (c )(1), and (d)(1).

26.     The EEO investigator and all persons reviewing the record developed by that investigator were clearly on notice of the Rehabilitation Act and Privacy Act restrictions that were applicable to the ROI file. Indeed, Mr. DeHaemers' EEO complaint form expressly provided that his medical information would remain confidential in the EEO process, and that such materials and the file in general were also protected by the Privacy Act. Pl. Ex. 1; see also Pl. Ex. 2., "Complaint of Discrimination in the Federal Government".

27.     The Agency EEO investigator stated that she completed her Report of Investigation on October 12, 2006. The report contained medical records which are considered "confidential" under the Rehabilitation Act, as well as records expressly protected by the Privacy Act.

28.     After the ROI was issued, Mr. DeHaemers commenced discovery in the administrative EEO process, which included taking the depositions of the supervisors, co-workers and subordinates who were familiar with and/or the source of the allegations raised by Mr. DeHaemers.

29.     Deposition testimony revealed that members of the Agency had engaged in collusion to defeat the discovery process. This collusion involved a series of violations of Mr. DeHaemers' Privacy Act rights under 5 U.S.C. § 522a, and unlawful disclosures of his confidential medical records.

30.     More specifically the sworn testimony established unequivocally that Agency personnel, with the knowledge, consent or actual assistance of supervisors separately maintained personnel files on Mr. DeHaemers, wrongfully obtained, maintained and disseminated confidential medical information pertaining to Mr.

DeHaemers and did so largely to advance the Agency's interests in the defense of Mr. DeHaemers EEO complaint. In short, the Agency improperly created, maintained and disseminated records and did so for an improper purpose, to punish Mr. DeHaemers for invoking the EEO process.

**COUNT ONE:**
**VIOLATION OF THE PRIVACY ACT:**
**UNLAWFUL DISSEMINATION OF THE PLAINTIFF'S CONFIDENTIAL MEDICAL RECORDS BY NATALEE HAFFNER AND KAY F. COLE**

31.    The Plaintiff incorporates the prior paragraphs herein by reference.

32.    Natalee M. Haffner (hereinafter "Ms. Haffner") is an EEO Investigator for the Agency.  Ms. Haffner as the EEO Investigator makes the final determination as to what confidential medical information is "necessary" for processing Mr. DeHaemers' complaint. 29 C.F.R. §1614.108(c)(1).

33.    Mr. DeHaemers submitted documentation regarding this disability to the EEO office in response to a request for medical documents from Ms. Haffner.

34.    Ms. Kay F. Cole (hereinafter "Ms. Cole"), is employed by the Agency as the Director of Operations.  Ms. Cole received Ms. Haffner's ROI which contained confidential medical records regarding Mr. DeHaemers and which is otherwise protected by the Privacy Act.

35.    Ms. Cole reviewed the records without the consent of or notification to Mr. DeHaemers. She then forwarded this information to Mr. Barbino, one of Mr. DeHaemers' supervisors. This was done without notice to or the consent of Mr. DeHaemers.

36.    Upon information and belief, Ms. Haffner and Ms. Cole also disseminated the information contained in the ROI to others within the Agency.

37.    The ROI consisted of 269 pages and contained sensitive and Privacy Act-protected medical information.

38.    The Report's Cover page, authored by Ms. Cole, stated, "[a]ll investigative files are covered by the Privacy Act of 1974, 5 U.S.C. 522a.  Access to or release for complaint files is controlled in accordance with the law to protect the privacy interest of the subjects and the integrity of the files.  **Therefore, if you release copies of this file, or any part of it, you must ensure the information released does not violate the Privacy Act."** Pl. Ex. 1 (emphasis added).

39.    The ROI contained not only Mr. DeHaemers' Formal Complaint, but information concerning his physical and mental health (Pl. Ex. 2) (Exhibit F of ROI).

40.    Ms. Cole took no steps to determine whether the medical records contained within the ROI were covered by the Privacy Act, nor did she take any steps to sanitize the record to exclude confidential information protected by the Privacy Act as is required by the regulations and policies governing the EEO process.

41.    Ms. Cole forwarded the ROI and the confidential medical information to Mr. Barbino, Mr. Sommers, and Ms. Novel at sometime after October 12, 2006, even though these individuals were the alleged principal discriminatory actors in Mr. DeHaemers's EEO Complaint.  See Pl. Ex. 1 and 2.

42.    Ms. Haffner also disclosed Mr. DeHaemers' Privacy Act-protected medical records to Mr. Barbino, Mr. Sommers and Ms. Novel, again without the consent of Mr. DeHaemers and without other lawful justification. 5 U.S.C. § 522a(b). Further Ms. Haffner did not make an accurate accounting of this disclosure of the Privacy Act

protected materials as is required under the Act.  5 U.S.C. §522a(c). Such acts were either

willful or intentional or done with negligence or a reckless disregard of Plaintiff's rights.

43.    As a proximate result, Plaintiff has suffered injury and damages, including

actual, compensatory and reputation damages, has lost compensation and has suffered

emotional distress which proximately flows from the misuse and dissemination of his

private information.  In addition, Plaintiff incurred attorney's fees to uncover these

breaches and will spend additional attorney's fees to uncover subsequent breaches and to

remedy this misconduct.

### COUNT TWO:
### VIOLATION OF THE REHABILITATION ACT:
### UNLAWFUL DISSEMINATION OF THE PLAINTIFF'S CONFIDENTIAL
### MEDICAL RECORDS BY NATALEE HAFFNER AND KAY F. COLE

44.    The Plaintiff incorporates the prior paragraphs herein by reference.

45.    Ms. Haffner and Ms. Cole had duties to sanitize the ROI and ensure that

no dissemination of the Plaintiff's confidential medical records to third parties could

occur.

46.    Ms. Haffner and Ms. Cole acted with express disregard to this duty, and

purposefully and with reckless disregard to the rights of the Plaintiff, disseminated the

ROI which contained confidential medical records of the Plaintiff, knowing that such

dissemination would likely lead to further dissemination and intending that result.

47.    As a proximate result, Plaintiff has suffered injury and damages, including

actual, compensatory and reputation damages, has lost compensation and has suffered

emotional distress which proximately flows from the misuse and dissemination of his

private information.  In addition, Plaintiff incurred attorney's fees to uncover these

breaches and will spend additional attorney's fees to uncover subsequent breaches and to remedy this misconduct.

## COUNT THREE:
### UNLAWFUL DISSEMINATION OF PLAINTIFF'S
### PRIVACY ACT PROTECTED MATERIALS BY MICHAEL BARBINO

48.     The Plaintiff incorporates the prior paragraphs herein by reference.

49.     Mr. Barbino is the Plaintiff's second-line supervisor.  Although clearly identified as a witness in the EEO complaint, Mr. Barbino obtained an unsantized copy of the October 12, 2006 ROI issued by Ms. Haffner, which contained references and exhibits related to Mr. DeHaemers' medical condition.

50.     Despite a clear statement that the ROI was a Privacy Act protected record (Pl. Ex. 1), Mr. Barbino reviewed and disseminated the ROI, in its unsanitized condition, thus committing two separate and distinct violations of the Act: the review and dissemination of the ROI and the review and dissemination of Mr. DeHaemers' medical information.

51.     On Tuesday, February 6, 2007 at 11:21 a.m., Mr. Barbino distributed the entire unsantized ROI regarding the Plaintiff and containing the Plaintiff's confidential medical records, to all persons who the Plaintiff had served deposition notices upon to obtain testimony from in his EEO administrative complaint.

52.     Mr. Barbino may have also distributed the materials to others within and outside the Agency.

53.     The purpose of the distribution was to provide witnesses with information they would not have otherwise been able to obtain because of the Privacy Act.

54.    This allowed witnesses to conform their deposition testimony so as to be consistent with prior records statements, and to inform the witnesses of possible defenses Mr. DeHaemers was raising so as to defeat them.

55.    Indeed Mr. Barbino held a meeting the same day he disseminated the materials (and the day before the first deposition) that was designed to allow the witnesses to come up with a single Agency-sponsored version of events that would obstruct and defeat the EEO process, Mr. DeHaemers' claims and the whole notion behind taking depositions based on the individual personal knowledge of the witnesses.

56.    As a result of Mr. Barbino's obstruction and interference, the following persons received the unsanitized ROI and were instructed to review its contents:

a.    Gerald Kleeman (hereinafter "Mr. Kleeman");

b.    Deborah Jeffries (hereinafter "Ms. Jeffries");

c.    Brenda Biggs (hereinafter "Ms. Biggs");

d.    Robert Shelby, (hereinafter "Mr. Shelby");

e.    Ms. Novel; and

f.    Captain Adam Cook, the Agency Attorney in the EEO case (hereinafter "Captain Cook").

57.    Mr. DeHaemers was not notified of, did not consent to or provide authorization for the release of any Privacy Act protected materials to these persons.

58.    Mr. Barbino, in an effort to taint the EEO process, engaged in five separate unlawful disclosures of Privacy Act material.

59.    Ms. Jeffries, testified at her deposition that she received the ROI from Mr. Barbino at least once before the dissemination of February 6, 2007 identified in

paragraph 57, which is a sixth unlawful disclosure and which raises the probability of more violations of the Act.

60.    Upon information and belief, then other persons received this medical information or subsequently disclosed it to other non-authorized persons.

61.    Neither Mr. Kleeman, Ms. Jeffries, Ms. Biggs nor Mr. Shelby supervise or even work in the same office as Mr. DeHaemers.

62.    None of the recipients of the email had any lawful justification for reviewing the confidential and Privacy Act protected records.

63.    Capt. Cook, received the email containing the ROI and did not notify opposing counsel or Mr. DeHaemers of the breach.

64.    Capt. Cook had a duty to notify the Plaintiff of such breach.

65.    Indeed the attorney appears to have met with these witnesses on the day the email was sent by Mr. Barbino and conferred with them about its contents.

66.    The conduct of Agency in this matter was intentional and willful with respect to the unlawful disclosure of the Plaintiff's Privacy Act-protected material, and the refusal to correct the same and/or notify the Plaintiff of the breach.  Mr. Barbino unlawfully, willfully and intentionally disseminated this protected material when he issued an unsanitized ROI to all persons who had been identified by the parties as potential witnesses in DeHaemers v. Wynne, Agency No 9L2W06004; EEOC No. 570-2007-0011X on February 6, 2007.

67.    As a proximate result, Plaintiff has suffered injury and damages, including actual, compensatory and reputation damages, has lost compensation and has suffered from emotional distress which proximately flows from the intentional misuse and

dissemination of his private information.  In addition, Plaintiff incurred attorney's fees to uncover these breaches and will spend additional attorney's fees to uncover subsequent breaches and to remedy this misconduct.

**COUNT FOUR:**
**UNLAWFUL DISSEMINATION OF PLAINTIFF'S**
**CONFIDENTIAL MEDICAL RECORDS BY MICHAEL BARBINO**

68.     The Plaintiff incorporates the prior paragraphs herein by reference.

69.     Mr. Barbino is the Plaintiff's second-line supervisor.  Mr. Barbino obtained an unsantized copy of the October 12, 2006 ROI issued by Ms. Haffner, which contained references and exhibits related to Mr. DeHaemers' medical condition.

70.     Despite a clear statement that the ROI was a Privacy Act protected record (Pl. Ex. 1), Mr. Barbino reviewed and disseminated the ROI, in its unsanitized condition, thus disseminating of Mr. DeHaemers' confidential medical information as alleged in the previous count in an unlawful and intentional attempt to harm Mr. DeHaemers  and infringe upon his EEO rights.

71.     As a proximate result, Plaintiff has suffered injury and damages, including actual, compensatory and reputation damages, has lost compensation and has suffered from emotional distress which proximately flows from the intentional misuse and dissemination of his private information.  In addition, Plaintiff incurred attorney's fees to uncover these breaches and will spend additional attorney's fees to uncover subsequent breaches and to remedy this misconduct.

**COUNT FIVE:**
**RETALIATION BY MICHAEL BARBINO IN VIOLATION OF THE**
**REHABILITATION ACT'S ANTI-RETALIATION PROVISIONS**

72.     The Plaintiff incorporates the prior paragraphs herein by reference.

73.    Mr. Barbino is the Plaintiff's second-line supervisor.  Although clearly identified as a witness in the EEO complaint, Mr. Barbino obtained an unsantized copy of the October 12, 2006 ROI issued by Ms. Haffner, which contained references and exhibits related to Mr. DeHaemers' medical condition.

74.    Mr. Barnino was an alleged discriminatory actor in <u>DeHaemers v. Wynne</u>, Agency No 9L2W06004; EEOC No. 570-2007-0011X.

75.    On Tuesday, February 6, 2007 at 11:21 a.m., Mr. Barbino distributed the entire unsantized ROI regarding the Plaintiff and containing the Plaintiff's confidential medical records, to all persons who the Plaintiff had served deposition notices upon to obtain testimony from in his EEO administrative complaint.

76.    Mr. Barbino's intent was punitive and he disseminated the confidential medical information in order to retaliate against Mr. DeHaemers  for identifying him as a discriminatory actor, and noticing his deposition, which are protected acts under the Rehabilitation Act's anti-retaliation procedures.

77.    Capt. Cook attempted to conceal this retaliatory misconduct and materially omitted a disclosure of the unlawful dissemination from the Plaintiff.

78.    As a proximate result, Plaintiff has suffered injury and damages, including actual, compensatory and reputation damages, has lost compensation and has suffered from emotional distress which proximately flows from the intentional misuse and dissemination of his private information.  In addition, Plaintiff incurred attorney's fees to uncover these breaches and will spend additional attorney's fees to uncover subsequent breaches and to remedy this misconduct.

**COUNT SIX:**
**RETALIATION BY MICHAEL BARBINO IN VIOLATION OF**
**THE ADEA'S ANTI-RETALIATION PROVISIONS**

79.     The Plaintiff incorporates the prior paragraphs herein by reference.

80.     Mr. Barbino's intent in the dissemination alleged in the previous count was punitive and he disseminated the confidential medical information in order to retaliate against Mr. DeHaemers  for identifying him as a discriminatory actor, and noticing his deposition, which are protected acts under the ADEA's anti-retaliation procedures.

81.     As a proximate result, Plaintiff has suffered injury and damages, including actual, compensatory and reputation damages, has lost compensation and has suffered from emotional distress which proximately flows from the intentional misuse and dissemination of his private information.  In addition, Plaintiff incurred attorney's fees to uncover these breaches and will spend additional attorney's fees to uncover subsequent breaches and to remedy this misconduct.

**COUNT SEVEN:**
**RETALIATION BY MICHAEL BARBINO IN VIOLATION OF**
**TITLE VII'S ANTI-RETALIATION PROVISIONS**

82.     The Plaintiff incorporates the prior paragraphs herein by reference.

83.     Mr. Barbino's intent in the dissemination alleged in the previous count was punitive and he disseminated the confidential medical information in order to retaliate against Mr. DeHaemers  for identifying him as a discriminatory actor, and noticing his deposition, which are protected acts under the Title VII's anti-retaliation procedures.

84.     As a proximate result, Plaintiff has suffered injury and damages, including actual, compensatory and reputation damages, has lost compensation and has suffered from emotional distress which proximately flows from the intentional misuse and dissemination of his private information.  In addition, Plaintiff incurred attorney's fees to uncover these breaches and will spend additional attorney's fees to uncover subsequent breaches and to remedy this misconduct.

### COUNT EIGHT:
### MAINTAINANCE OF SEPARATE PERSONNEL FILE
### ON THE PLAINTIFF BY MS. JEFFRIES

85.     The Plaintiff incorporates the prior paragraphs herein by reference.

86.     The Privacy Act prohibits the creation and disclosure of information that is not retrievable through "a system of records." 5 U.S.C. § 552a(b).

87.     Ms. Jeffries was Mr. DeHaemers' supervisor until 2004.

88.     Ms. Jeffries was identified as a witness by Mr. DeHaemers in his EEO action, DeHaemers v. Wynne, Agency No 9L2W06004; EEOC No. 570-2007-0011X.

89.     Ms. Jeffries kept a separate file regarding Mr. DeHaemers' medical condition and disability in her office, which was not maintained consistent with the Privacy Act.

90.     Upon information and belief, this file has been disclosed to others.

91.     Ms. Jeffries' file contains medical records.

92.     Ms. Jeffries, with the Agency's knowledge, continued to maintain this record in her desk.

93.    It is believed Ms. Jeffries actions were not malicious in purpose but that she lacked necessary training and guidance on her responsibilities under the Privacy Act. The Agency is nevertheless liable for the violation.

94.    As a proximate result, Plaintiff has suffered injury and damages, including actual, compensatory and reputation damages.  In addition, Plaintiff incurred attorney's fees to uncover these breaches and will spend additional attorney's fees to uncover subsequent breaches and to remedy this willful misconduct.

**COUNT NINE:**
**MS. JEFFRIES' MAINTAINANCE AND DISSEMINATION OF SEPARATE**
**PERSONNEL FILE ON THE PLAINTIFF**
**CONTAINING CONFIDENTIAL MEDICAL RECORDS**

95.    The Plaintiff incorporates the prior paragraphs herein by reference.

96.    The separate personnel file of the Plaintiff maintained by Ms. Jeffries as alleged in the previous count, upon information and belief, contained confidential medical records which are protected by the Rehabilitation Act.

97.    Ms. Jeffries and the Agency had a duty under the Rehabilitation Act to maintain the confidentiality of the Plaintiff's confidential medical records contained within Ms. Jeffries separate personnel file of the Plaintiff.

98.    Ms. Jeffries and the Agency undertook no effort and/or insufficient efforts to maintain the confidentiality of the Plaintiff's confidential medical records despite the knowledge that Ms. Jeffries separate personnel file contained confidential medical records of the Plaintiffs which were protected by the Rehabilitation Act.

99.    As a result, the Plaintiff's confidential medical records were not kept confidential, and upon information and belief, were unlawfully disseminated.

100.    As a proximate result, Plaintiff has suffered injury and damages, including actual, compensatory and reputation damages.  In addition, Plaintiff incurred attorney's fees to uncover these breaches and will spend additional attorney's fees to uncover subsequent breaches and to remedy this willful misconduct.

**COUNT TEN:**
**MAINTAINANCE OF SEPARATE PERSONNEL FILE**
**ON THE PLAINTIFF BY MR. BARBINO**

101.    The Plaintiff incorporates the prior paragraphs herein by reference.

102.    Mr. Barbino wrote a "memorandum to record" entitled "Behavior of Mr. Truman DeHaemers on August 24, 2005." See Pl. Ex. 3. This information was purportedly based on discussions with Ms. Biggs, who also maintained, with Mr. Barbino's knowledge, a database on the Plaintiff.

103.    Mr. Barbino is neither in Ms. Biggs' chain of command nor in Mr. DeHaemers chain of command.

104.    Mr. Barbino wrote his memorandum in preparation of advancing proposed disciplinary action against Mr. DeHaemers.  The memo was written in August 2005 and was not submitted to the Agency personnel department until October 26, 2005.

105.    Mr. Barbino unlawfully disclosed this record to others before submitting it to Mr. DeHaemers' personnel file.

106.    The memorandum refers to Mr. DeHaemers' medical condition.

107.    Ms. Novel testified that Mr. Barbino "did not keep memo for records as some legal personnel documentation officially for the file.  This was simply a statement of the activity that took place, it was not a legal document we sent to a court house and

placed in the privacy act; but it was a document relied upon for DeHaemers personnel action." Deposition of Kathlynn Novel, 2/8/2007 at p. 87, line 3.

108.    The memorandum of record and Mr. Barbino's file on Mr. DeHaemers is not secure nor retrievable through "a system of records." 5 U.S.C. § 552a(b).

109.    Mr. Barbino currently keeps the memorandum of record and other information regarding Mr. DeHaemers in his desk.

110.    The memorandum of record and Mr. Barbino's file on Mr. DeHaemers is not obtainable by Mr. DeHaemers under the Privacy Act, and has not been incorporated into Mr. DeHaemers' official personnel file.  Thus, the maintenance of the record violates the provisions of the Privacy Act and amounts to an unlawful record-keeping practice.

111.    As a proximate result, Plaintiff has suffered injury and damages, including actual, compensatory and reputation damages, has lost compensation and has suffered emotional distress which proximately flowed from the intentional misuse and dissemination of his private information.  In addition, Plaintiff incurred attorney's fees to uncover these breaches and will spend additional attorney's fees to uncover subsequent breaches and to remedy this willful misconduct.

## COUNT ELEVEN:
## MR. BARBINO'S MAINTAINANCE AND DISSEMINATION OF SEPARATE PERSONNEL FILE ON THE PLAINTIFF
## CONTAINING CONFIDENTIAL MEDICAL RECORDS

112.    The Plaintiff incorporates the prior paragraphs herein by reference.

113.    The separate personnel file of the Plaintiff maintained by Mr. Barbino as alleged in the previous count, upon information and belief, contained confidential medical records which are protected by the Rehabilitation Act.

114.   Mr. Barbino and the Agency had a duty under the Rehabilitation Act to maintain the confidentiality of the Plaintiff's confidential medical records contained within Mr. Barbino's separate personnel file of the Plaintiff.

115.   Mr. Barbino and the Agency undertook no effort and/or insufficient efforts to maintain the confidentiality of the Plaintiff's confidential medical records despite the knowledge that Mr. Barbino's separate personnel file contained confidential medical records of the Plaintiffs which were protected by the Rehabilitation Act.

116.   As a result, the Plaintiff's confidential medical records were not kept confidential, and upon information and belief, were unlawfully disseminated.

117.   As a proximate result, Plaintiff has suffered injury and damages, including actual, compensatory and reputation damages.  In addition, Plaintiff incurred attorney's fees to uncover these breaches and will spend additional attorney's fees to uncover subsequent breaches and to remedy this willful misconduct.

### COUNT TWELVE:
### MAINTENANCE OF SEPARATE PERSONNEL FILE
### ON THE PLAINTIFF BY MS. NOVEL

118.   The Plaintiff incorporates the prior paragraphs herein by reference.

119.   Ms. Novel testified that she kept a separate personnel file of Mr. DeHaemers.

120.   Ms. Novel maintains a "memorandum to record" authored by Mr. Barbino, in three separate files in her office, in her desk.

121.   Ms Novel's records refer to Mr. DeHaemers' medical records.

122.   The file is not secure not secure nor retrievable through "a system of records." 5 U.S.C. § 552a(b).

123.    Ms. Novel's file is not obtainable by Mr. DeHaemers under the Privacy Act, and has not been incorporated into Mr. DeHaemers' official personnel file.

124.    Upon information and belief, this file has been disclosed to others.

125.    Ms. Novel's file on Mr. DeHaemers contains medical records.

126.    Ms. Novel continues to maintain this file in her desk.

127.    Ms. Novel's action constitutes a violation of the Privacy act as it applies to record-keeping practices.

128.    As a proximate result, Plaintiff has suffered injury and damages, including actual, compensatory and reputation damages and has lost compensation  and suffered as emotional distress which proximately flowed from the intentional misuse and dissemination of his private information.  In addition, Plaintiff incurred attorney's fees to uncover these breaches and will additional attorneys fees to uncover subsequent breaches and to remedy this willful misconduct.

## COUNT THIRTEEN:
## MS. NOVEL'S MAINTAINANCE AND DISSEMINATION OF SEPARATE PERSONNEL FILE ON THE PLAINTIFF
## CONTAINING CONFIDENTIAL MEDICAL RECORDS

129.    The Plaintiff incorporates the prior paragraphs herein by reference.

130.    The separate personnel file of the Plaintiff maintained by Ms. Novel. as alleged in the previous count, upon information and belief, contained confidential medical records which are protected by the Rehabilitation Act.

131.    Ms. Novel and the Agency had a duty under the Rehabilitation Act to maintain the confidentiality of the Plaintiff's confidential medical records contained within Ms. Novel's separate personnel file of the Plaintiff.

132.    Ms. Novel and the Agency undertook no effort and/or insufficient efforts to maintain the confidentiality of the Plaintiff's confidential medical records despite the knowledge that Ms. Novel's separate personnel file contained confidential medical records of the Plaintiffs which were protected by the Rehabilitation Act.

133.    As a result, the Plaintiff's confidential medical records were not kept confidential, and upon information and belief, were unlawfully disseminated.

134.    As a proximate result, Plaintiff has suffered injury and damages, including actual, compensatory and reputation damages.  In addition, Plaintiff incurred attorney's fees to uncover these breaches and will spend additional attorney's fees to uncover subsequent breaches and to remedy this willful misconduct.

### COUNT FOURTEEN:
### MAINTENANCE OF SEPARATE PERSONNEL FILE
### ON THE PLAINTIFF BY MS. BIGGS

135.    The Plaintiff incorporates the prior paragraphs herein by reference.

136.    During the deposition of Ms. Biggs on January 17, 2007, Ms. Biggs testified that beginning in August 2001, she began maintaining a separate personnel file entitled "Truman DeHaemers Behavior." Pl. Ex. 4.

137.    Ms. Biggs, upon first meeting Mr. DeHaemers in August 2001, immediately began compiling a data-base upon her computer to catalogue Mr. DeHaemer's conduct.

138.    Ms. Biggs testified that she maintained such records for the sole purpose of  assisting management in disciplining Mr. DeHaemers.

139.    Ms. Biggs routinely added entries and over the course of five years, developed a chronology of what she deemed to be offensive behavior by Mr. DeHaemers.

140.    Ms. Biggs submitted a list of these entries to the management of the Agency which advised her to continue to collect information about Plaintiff.

141.    At present count, Ms. Biggs made 23 file entries regarding Mr. DeHaemers.  Based upon the entries contained on the database maintained by Ms. Biggs, Ms. Biggs had created 23 separate files which were retrievable or ought to have been retrievable under the name "Truman DeHaemers." Pl. Ex. 4.

142.    Ms. Biggs updated and altered her database on Mr. DeHaemers after she learned of his EEO complaint in an effort to harm Mr. DeHaemers and to defeat his EEO complaint.

143.    Agency supervisors were aware of this separate file and were complicit in Ms. Biggs' separate file maintenance.

144.    Additionally, on April 11, 2006, Ms. Biggs authored a memorandum to Jerry Kleeman on Agency letterhead.  This memorandum was also kept in a separate personnel filed maintained by Ms. Biggs exclusively on Mr. DeHaemers.  Pl. Ex. 3.

145.    Ms. Biggs conduct repeatedly and intentionally violated the Privacy Act and was done for the improper purpose of defeating Mr. DeHaemers' discrimination complaint or harming him in the workplace.

146.    Mr. DeHaemers was and is a highly qualified federal employee who at one point supervised Ms Biggs' work.

147.    Plaintiff and others, including Ms. Jeffries, have testified that they perceived Ms. Biggs as a substandard performer.

148.    Ms. Biggs maintenance of a file was clearly a defensive and retaliatory attempt  to gather information to deflect from her own performance issues.

149.    Mr. Barbino, Ms. Sparks and others not only condoned Ms. Biggs actions they promoted her because of them.

150.    Ms. Biggs' records were improperly maintained for an improper purpose and she intentionally sought to use them to damage and injure Plaintiff's reputation and standing.

151.    As a proximate result, Plaintiff has suffered injury and damages, including actual, compensatory and reputation damages, has lost compensation and has suffered emotional distress which proximately flowed from the intentional misuse and dissemination of his private information.  In addition, Plaintiff incurred attorney's fees to uncover these breaches and will spend additional attorney's fees to uncover subsequent breaches and to remedy this willful misconduct.

**COUNT FIFTEEN:**
**MS. BIGGS' MAINTAINANCE AND DISSEMINATION OF SEPARATE**
**PERSONNEL FILE ON THE PLAINTIFF**
**<u>CONTAINING CONFIDENTIAL MEDICAL RECORDS</u>**

152.    The Plaintiff incorporates the prior paragraphs herein by reference.

153.    The separate personnel file of the Plaintiff maintained by Ms. Biggs, as alleged in the previous count, upon information and belief, contained confidential medical records which are protected by the Rehabilitation Act.

154.    Ms. Biggs and the Agency had a duty under the Rehabilitation Act to maintain the confidentiality of the Plaintiff's confidential medical records contained within Ms. Biggs' separate personnel file of the Plaintiff.

155.    Ms. Biggs and the Agency undertook no effort and/or insufficient efforts to maintain the confidentiality of the Plaintiff's confidential medical records despite the

knowledge that Ms. Biggs' separate personnel file contained confidential medical records of the Plaintiffs which were protected by the Rehabilitation Act.

156.     As a result, the Plaintiff's confidential medical records were not kept confidential, and upon information and belief, were unlawfully disseminated.

157.     As a proximate result, Plaintiff has suffered injury and damages, including actual, compensatory and reputation damages.  In addition, Plaintiff incurred attorney's fees to uncover these breaches and will spend additional attorney's fees to uncover subsequent breaches and to remedy this willful misconduct.

## COUNT SIXTEEN:
## FAILURE TO PROVIDE RECORDS UPON PRIVACY ACT REQUEST

158.     The Plaintiff incorporates the prior paragraphs herein by reference.

159.     Plaintiff requested all information retrievable under his name under the Privacy Act. 5 U.S.C. 522a. See  Pl. Ex. 6. (Note: the date of the letter incorrectly states March 21, 2006).

160.     The Agency did not acknowledge receipt of this request.  5 U.S.C. § 552a(d)(2)(A).

161.     The Agency did not produce any file, or make any response to this request.

162.     The Agency did not produce Ms. Biggs', Ms. Novel's, Mr. Barbino's or Ms. Jeffries' separate personnel files on Mr. DeHaemers in response to the request and the information contained in those files are separate files in violation of the Privacy Act.

163.     Defendant's willful refusal to timely provide the records requested violates the Privacy Act. See, e.g., 5 U.S.C. § 552a(d).

164.    Defendant's willful refusal to timely provide the records requested unlawfully prohibited the Plaintiff from seeking corrections to any information that may be contained in the documents he requested. The Defendant's refusal to allow review and correction of records is likewise a violation of the Privacy Act. See, e.g., 5 U.S.C. § 552a(d).

165.    Defendant's refusal to timely provide records pertaining to the Plaintiff has damaged the Plaintiff's ability to successfully compete for positions in the federal government, successfully defend against personnel claims based in part on these actions, and prevented the Plaintiff in his ability to pursue his discrimination claims. Consequently, the Plaintiff has lost the opportunity to apply for positions and has lost income and benefits because the refusal to identify documents regarding Plaintiff have adversely impacted Plaintiff's ability to exercise his statutory rights related to his personnel actions.

166.    In addition to the harm listed above, the Agency should be required to amend and correct Plaintiff's records and to produce the records sought.

### COUNT SEVENTEEN:
### FAILURE TO MAINTAIN RECORDS UNDER PRIVACY ACT

167.    The Plaintiff incorporates the prior paragraphs herein by reference.

168.    The failure to provide the records requested in the previous count is because the Agency failed to properly maintain these records as a system of records under the Privacy Act , 5 U.S.C. § 552a(e)(9) and (10).

169.    In testimony of Ms. Biggs, it became apparent that Ms. Biggs no longer has custody of personnel files used to support an adverse action against Mr. DeHaemers.

170.    Defendant has therefore failed to establish and maintain physical safeguards to ensure the security and confidentiality of records in its possession in violation of the Privacy Act and the Defendant's regulations.

171.    The Defendant's management testified that many of Mr. DeHaemers' records, including the Plaintiff's medical information, were simply kept in a folder.

172.    Defendant refuses to properly safeguard records pertaining to the Plaintiff has damaged the Plaintiff's ability to successfully prosecute his EEO Complaint and Plaintiff's ability to exercise his statutory rights related to the rights terms and conditions of his employment.

173.    Upon information and belief, the Agency has permitted the alteration and/or destruction of some of these files.

174.    As a proximate result, Plaintiff has suffered injury and damages, and lost compensation as well as emotional distress which proximately flowed from the intentional misuse and dissemination of his private information.  In addition, Plaintiff incurred attorney's fees to uncover these breaches and will spend more attorneys' fees to uncover subsequent breaches and to remedy this willful misconduct.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Truman DeHaemers prays that this Court:

(a)    Declare that the Defendant has violated the Privacy Act by withholding the requested records;

(b)    Order the Defendant to immediately make the requested records available to the Plaintiff;

(c)    Declare that the Defendant violated the Privacy Act by failing to safeguard records pertaining to the Plaintiff;

(d)    Declare that the Defendant retaliated against the Plaintiff for invoking his EEO rights under the Rehabilitation Act;

(e)    Award all proximate consequential damages available under the law, including emotional distress and attorneys fees, in addition to injunctive relief available to the Plaintiff under the Rehabilitation Act, as a result of the Defendant's violation of the anti-retaliation provisions under the Rehabilitation Act.

(f)    Declare that the Defendant retaliated against the Plaintiff for invoking his EEO rights under the ADEA;

(g)    Award all proximate consequential damages available under the law, including emotional distress and attorneys fees, in addition to injunctive relief available to the Plaintiff under the ADEA, as a result of the Defendant's violation of the anti-retaliation provisions under the ADEA.

(h)    Declare that the Defendant retaliated against the Plaintiff for invoking his EEO rights under Title VII;

(i)    Award all proximate consequential damages available under the law, including emotional distress and attorneys fees, in addition to injunctive relief available to the Plaintiff under Title VII, as a result of the Defendant's violation of the anti-retaliation provisions under Title VII,

(j)        Award the Plaintiff damages to the maximum amount permissible under the Rehabilitation Act, including for all lost income, benefits, and/or other adverse impacts including emotional distress for each unlawful disclosure of the Plaintiff's confidential medical records identified hereinabove or as is disclosed at trial;

(k)        Award the Plaintiff damages to the maximum amount permissible under the Privacy Act, including for all lost income, benefits, and/or other adverse impacts including emotional distress for each unlawful disclosure of the Plaintiff's Privacy Act records identified hereinabove or as is disclosed at trial;

(l)        Award Plaintiff all costs and attorneys' fees pursuant to 5 U.S.C. § 552a(g)(2); and

(m)       All other relief which this court deems fair and just and available under 5 U.S.C. § 552a, the Rehabilitation Act, the ADEA and Title VII.

### **JURY DEMAND**

Trial by jury is requested on all issues that may be considered by a jury.

Respectfully submitted,
TRUMAN DEHAEMERS
By Counsel

WADE & BYRNES, P.C.


_____/s/_____
Kevin Byrnes, Esq., DC. Bar No. 480195
616 North Washington Street
Alexandria, Virginia 22314
Phone: 703/836-9030
Fax: 703/683-1543
Counsel for Plaintiff Truman DeHaemers